MARY E. JONES, Appellant, *v.* LILLIAN L. JONES et al., Impleaded, etc., Respondents.

120  589
143.  351

J. died in 1870 seized of certain lands, which he devised to his wife for life, remainder to his five children. The widow died in 1876, and, in 1877, defendants M. and R., two of the children, conveyed their interests in the premises to their uncle C., for the consideration paid to each of $1,000. In an action for partition plaintiff claimed said interests as sole heir at law of C., who died intestate. The negotiations which resulted in said conveyance were had between M. and R. and their brother O. The grantors alleged that the deed was obtained by O., acting for the grantee, for a grossly inadequate consideration, by misrepresentations, concealments and abuse of the confidential relation existing between them and their brother. It appeared that said defendants at their father's death, were of the ages of fourteen and seventeen; that O. was executor of the will; that they had no knowledge or information in regard to the affairs of the estate, but relied mainly upon O. to protect their interests and were dependent upon his advice and direction; that O. was the son-in-law of the grantee, lived in the same house with, and attended to business matters for him. The sale of their interest was first suggested to M. and R. by their brother, and he designated the price; their interests were worth at least $12,000. O. not only made to them representations misleading, to their prejudice, in respect to the character and condition of the property, but concealed from them facts known to him, essentially bearing upon the value, and so, induced them to believe the sale was for their interest. It did not appear that the purchase was made for the benefit of O.,

or that he personally expected to realize anything from it. *Held*, the evidence authorized the inference that O. acted in the transaction for his father-in-law, and so treating the transaction, the instrumentalities imputable to O. in consummating the sale might, for the purposes of the remedy, be deemed adopted by the grantee; that the representations and concealments were such as a court of equity might properly characterize as fraudulent; and that, therefore, a judgment directing a rescission of the sale, cancellation of the deed and restoration of the property on refunding the purchase-price, less a proper proportion of the rents of the premises received by plaintiff, was proper.

*It seems*, that as the Code of Civil Procedure provides (§ 1544) that issues of fact in an action for partition are triable by a jury, the trial court may not disregard the findings of the jury. Exceptions taken, therefore, on the trial before the jury may be considered on appeal from the judgment.

The issues of fact herein were tried by a jury; the court was requested by plaintiff, but declined to charge, that, if O. " believed or had reason to believe that the statements he is alleged to have made were true, the plaintiff must have a verdict." *Held*, that as the claim for relief was founded in part upon a breach of duty or abuse of confidence on the part of O., in concealing facts, without regard to the question which would have been presented had the relief been dependent solely upon misrepresentations, the decision was proper.

M. and O. were permitted to testify to transactions and interviews between themselves and their brother, not connected with or relating to the transaction in question, occurring from the time of their father's death up to and after the conveyance. *Held*, no error; that the testimony was admissible as bearing upon the relation of trust and confidence existing between the brother and sisters.

The rule which excludes from consideration as against a principal the acts and declarations of his agent when not engaged in the execution of his agency and which do not relate to the subject of its performance, is not applicable where the question is one of fraud charged against the agent, in dealing advantageously and in abuse of a relation of trust and confidence held by him toward a person with whom he is dealing on behalf of his principal. In such a case evidence of his acts and declarations showing the existence of that relation is competent.

Testimony offered on the part of plaintiff to the effect that two other children of the testator had offered to sell their interests each for $5,000, but failed to do so, was excluded. *Held*, no error.

While evidence of the actual sale of property may be competent on the question of its value, evidence of a mere effort or offer to sell, unless made by a party to the litigation, is not competent.

(Argued June 2, 1890; decided June 24, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made March 17, 1887, which affirmed a judgment entered on a verdict and on a decision of the trial court, and affirmed orders denying motion for a new trial.

This action was brought for the partition of certain land situated at Hunter's Point, in Long Island City, and fronting on East River opposite the city of New York.

The plaintiff alleged title in herself to two undivided fifth parts of the premises, which came to her by descent from Charles H. Jones, her father, who died intestate in 1882. In the action as originally commenced, Maria L. Rutherford and Rosalie A. Oakley were not made defendants, but on their own application they were made parties. They and defendant Lillian L. Jones, and none others answered.

It appeared that Oliver H. Jones died seized of the premises in 1870, leaving his will by which he devised to his wife, Louisa, a life estate in the land and remainder to his five children. The defendants, other than John L. Gardner, were such children. His will was admitted to probate and recorded in 1871, and letters testamentary issued to his widow, his son, Oliver L. Jones, and his son-in-law Gardner. The widow died 1876, and in December, 1877, the defendants, Rutherford and Oakley, made a deed of conveyance of their interest in the premises in question to their uncle, Charles H. Jones, the father of the plaintiff. The negotiation which resulted in the conveyance was had by their brother, Oliver L. Jones, with them, and the consideration paid to each of them for it was $1,000. Those defendants allege that it was obtained by him acting for the grantee by misrepresentation, concealments and abuse of the confidential relation between them and their brother, and that the consideration which they were induced by him to take was grossly inadequate to the value of their interest in the property. The issues were tried by jury, and they by their verdict found: 1. That the price paid was inadequate for the property at the time of the conveyance. 2. That the execution and delivery of the deed were procured by

Oliver L. Jones by undue influence while he occupied a confidential relation to those defendants.    3. That in procuring its execution and delivery he acted on behalf of the grantee. 4. That it was procured by his representation that each share so conveyed was not worth more than $1,000, or that the assessments had to be paid at once, or that it was practically impossible for each of the grantors to carry her interest in the property without the sale of considerable portion of her estate to enable her to pay her share of the taxes and assessments. 5. Also by the concealment from them of the fact in relation to the method of settling the assessments at a discount, or that their payment was not required for a term of years from the time of levy, or in regard to the terms of a lease which had been made by the widow to one Bostwick for the benefit of the Standard Oil Company.    6. That the value of the whole premises at the time of conveyance was $75,000.    7. That neither Mrs. Rutherford nor Mrs. Oakley fully discovered the alleged fraud prior to April 1, 1881.    Thereupon, the trial justice made in writing the decision of the court embracing the facts so found by the jury, and, as conclusion of law, determined that the deed was procured by fraud and was void; that the defendants, Rutherford and Oakley, by way of reimbursement, pay to the plaintiff the amount of the consideration paid to them respectively for the conveyance, less the proper proportion of the rents of the premises received by the plaintiff; that the deed should be canceled, and that those defendants were entitled to a reconveyance by deed to them to be made by the plaintiff.    Judgment was directed accordingly.

Further facts appear in the opinion.

*S. Jones* for appellant.    There was no proof authorizing a finding that Charles H. Jones ever authorized or employed Oliver L. Jones to act for him in the purchase of the property, or to purchase, or even that he desired to purchase it.    Agency cannot be established by declarations of the alleged agent. (*Mariam* v. *Wilber*, 52 N. Y. 270–273.)    If illegal evidence has been admitted under objections and exceptions that would have

a tendency to excite the passions, arouse the prejudice, awaken the sympathies or influence the judgment of the jurors in favor of the respondents and against Oliver L. Jones in any degree it cannot be considered harmless or disregarded on appeal. (*Anderson* v. *R., W. & O. R. R. Co.*, 54 N. Y. 334, 341, 342; *Hutchins* v. *Hutchins*, 98 id. 56–65; *P. Co.* v. *Ray*, 12 Otto [102 U. S.], 451–460). A principal is not bound or affected by acts or declarations of his agent, done or made, either before the commencement or after the termination of the agency. (*Warren* v. *Warren*, 46 N. Y. 228; *White* v. *Miller*, 71 id. 118–135.) Admitting that other fraudulent transactions could be proved as bearing on the transactions in question, yet only those which are of similar character and nearly contemporaneous can be admitted. (*Hawthorn* v. *Hodges*, 28 N. Y. 486; *Hall* v. *Naylor*, 18 id. 588; *Meyer* v. *People*, 80 id. 364–375; *Ross* v. *Ackerman*, 46 id. 210.) The evidence by O. L. Jones and Gardiner was brought out on cross-examination. This evidence was not cross-examination, it was affirmative evidence on behalf of respondents, and was incompetent. (*People* v. *Ct. Oyer & Terminer*, 83 N. Y. 436, 460; *Langley* v. *Wadsworth*, 99 id. 61, 63.) The rules and principles governing the reversal of judgments entered on verdicts of jurors in common-law actions for the reception of illegal, incompetent and improper evidence, and for the exclusion of competent material evidence applies to this case. (Code Civ. Pro. §§ 970–1544; *Bowen* v. *Becht*, 35 Hun, 434; *Norton* v. *Mallory*, 63 N. Y. 434–438; *Foote* v. *Beecher*, 78 id. 155.) The overruling a general objection to a question put to a witness is error when the tenable ground, if specifically taken, could not have been obviated, or when the evidence in any view and in its essential nature is not competent. (*Ward* v. *Kilpatrick*, 85 id. 417; *Daly* v. *Byrne*, 77 id. 182; *Quimby* v. *Strauss*, 90 id. 664; *Bergam* v. *Jones*, 94 id. 51.)

*Joseph H. Choate* for respondents, Jones and Rutherford. Martha Louise Rutherford and Rosalie Adele Oakley were

properly made parties to the action, and were clearly entitled to be brought in to defend said action. (Code Civ. Pro. §§ 452, 1542, 1545, 1557, 1577.) In making findings of fact and conclusions of law, in accordance with the practice in trials by the court, the court at Special Term adopted and followed the usual and proper procedure. If it were otherwise, however, the proceeding did not in the least affect the merits, and is, therefore, not a ground for granting a new trial. (Code Civ. Pro. § 1544; *Hewlett* v. *Wood*, 62 N. Y. 75, 77, 78; 3 Hun, 736; Code Civ. Pro. §§ 970, 972, 1010, 1022, 1023, 1544, 1557, 1577, 1595; *Learned* v. *Tillotson*, 97 N. Y. 1.) All of the evidence in the case showing the negotiations of Oliver L. Jones with his sisters, for the property in question, and showing, or tending to show, the general confidential character of the relations existing between the parties, is perfectly competent, and the numerous exceptions taken to its admission are without merit. (*Tate* v. *Williamson*, L. R. [2 Ch. Div.] 55, 60, 61; *McMahon* v. *Allen*, 35 N. Y. 403, 410; *Rhodes* v. *Bate*, L. R. [1 Ch. Div.] 260; *Sears* v. *Shafer*, 6 N. Y. 268, 272, 273; 1 Barb. 408; *Platt* v. *Platt*, 2 T. & C. 25, 29, 45–47; 58 N. Y. 646; *Hall* v. *Perkins*, 3 Wend. 626; *Brice* v. *Brice*, 5 Barb. 533; *Bennett* v. *Austin*, 81 N. Y. 332, 333; *Dent* v. *Bennett*, 4 Myl. & Cr. 269; *Grosvenor* v. *Sherratt*, 28 Beav. 659; 2 Pom. Eq. Jur. §§ 927, 928, 956, 957, 963; *McCarney* v. *People*, 83 N. Y. 408, 414, 417; *Bayliss* v. *Cockroft*, 81 id. 363, 370; *Marks* v. *King*, 64 id. 628, 629; *Murphy* v. *Boker*, 28 How. Pr. 251, 263; *Ahern* v. *Goodspeed*, 72 N. Y. 108, 114, 116; *Vane* v. *Vane*, L. R. [8 Ch. Div.] 383, 397; *Trevelyan* v. *Charter*, 4 L. J. Ch. [N. S.] 214; *Huguenin* v. *Basely*, 14 Ves. 272; *Bridgeman* v. *Green*, Wilmot's Notes, 58, 65; 2 Ves. Sen. 627; *Nicol's Case*, 3 DeG. & J. 387, 437, 438; *Whelan* v. *Whelan*, 3 Cow. 537, 577, 579, 588; *Bergen* v. *Udall*, 31 Barb. 9; Kerr on Fraud and Mistake, 189; *Bedell* v. *Bedell*, 37 Hun, 419, 421, 422; *Gawtry* v. *Doane*, 51 N. Y. 84, 90; *Marks* v. *King*, 64 id. 628; *Platner* v. *Platner*, 78 id. 90, 101; *Pontius* v. *People*, 82 id. 339, 346.) An objection based upon a general exception

only, is worthless, as it presents no point for consideration. (*People* v. *Noelke,* 29 Hun, 461 ; *Fountain* v. *Pettee,* 38 N. Y. 184 ; *Tooley* v. *Bacon,* 70 id. 37 ; *Daley* v. *Byrne,* 77 id. 187 ; *Quimby* v. *Strauss,* 90 id. 664 ; *Erben* v. *Lorrilard,* 19 N. Y. 229 ; *Stickney* v. *Billings,* 30 Hun, 304, 305 ; *Waldele* v. *N. Y. C. & H. R. R. R. Co.,* 95 N. Y. 274 ; *Curtis* · v. *Ayrault,* 3 Hun, 490, 491 ; *Howard* v. *McDonough,* 77 N. Y. 593, 594 ; 1 Greenl. on Ev. §§ 91, 484 ; *Newell* v. *Doty,* 33 N. Y. 83, 94 ; *Sturm* v. *Williams,* 6 J. & S. 325, 348.)     The exceptions to the testimony of Livingston are without merit. The witness showed plainly enough that he knew absolutely nothing about the property in question, and was incompetent to speak as an expert. (*Teerpenning* v. *C. E. Ins. Co.,* 43 N. Y. 282 ; *Jarvis* v. *Furman,* 25 Hun, 391, 393, 394 ; 1 Greenl. on Ev. § 52 ; *Chandler* v. *J. P. Aqueduct,* 122 Mass. 306, 307 ; *Benham* v. *Dunbar,* 103 id. 365 ; *Gardner* v. *Brookline,* 127 Mass. 363 ; *Huntington* v. *Attril,* 118 N. Y. 365, 378, 379.) It is not a matter of absolute right to require the jury to find specially upon any question of fact. (Code Civ. Pro. § 1187.)

*Hatch & Warren* for R. A. Oakley, respondent.     The practice adopted at the trial term was regular. (*Birdsall* v. *Patterson,* 51 N. Y. 43 ; *Vermilye* v. *Palmer,* 52 id. 471 ; *Croghan* v. *Livingston,* 17 id. 218 ; Code Civ. Pro. § 972 ; *Randall* v. *Randall,* 114 N. Y. 499.)     The facts are not brought up by this appeal. · (Code Civ. Pro. §§ 993, 1337.) The judgment should not be reversed on any of the exceptions to the admission or objection to evidence taken during the trial.     (*Krumm* v. *Beach,* 25 Hun, 293 ; 96 N. Y. 398 ; *Teerpenning* v. *C. E. Ins. Co.,* 43 id. 279 ; *Townsend* v. *N. Co.,* 4 J. & S. 170 ; Code Civ. Pro. § 1003.)     Question of admission or rejection of evidence in this case under section 829 of the Code is not involved. (*Denise* v. *Denise,* 110 N. Y. 562.)

BRADLEY, J.     The claim of the defendants, Oakley and Rutherford to the relief sought by them, was somewhat

founded upon the alleged relation of confidence of their brother Oliver L. Jones to them and its abuse by him. He was an executor of the will of their father, at the time of whose death, in 1870, those two defendants were of the ages of fourteen and seventeen years. Oliver was the eldest of the children, and on the death of their mother in 1876, he also became the administrator of her estate. There was evidence tending to prove that the defendants, Oakley and Rutherford, had up to the time in question given no attention to the business relating to the estate in which they were interested, and had but very little if any knowledge or information of it, but relied mainly upon their brother to take care of the business, protect their interest and to supply them such moneys as they needed from its income; and that they were confidently dependent upon his advice and direction in those respects, and that this relation continued beyond the time of the making of the deed in question. He had, some years before, married the plaintiff who was the only child of Charles H. Jones, and after the marriage he lived in the house with his father-in-law and attended considerably to his business.

The evidence on the part of the defendants was to the effect that the sale of their interests in the land at Hunter's Point, was first suggested by their brother to them, that he designated the price which each of them could obtain on the sale of it to Charles H. Jones; and that he represented to them that the assessments upon the land amounted to upwards of $40,000, called their attention to the unfavorable character of the premises and to the difficulty of paying the taxes and assessments, and led them to understand that it would be necessary, if they retained the property, for them to dispose of some other portions of their estate to pay them. While it was true that the assessments then about to be and shortly after levied upon this property, did amount to the sum mentioned, the time in which payment might be made, with interest at the rate of ten per cent per annum, would not expire until the end of ten years after the levy was perfected, and it appears that with a view to various street improvements

in the city of Long Island, assessments had been made and improvement certificates issued, and that such certificates were in the market at prices considerably below their par value, and were receivable by the city at par in payment for assessments. The conclusion was warranted by the evidence that none of those facts were communicated to those defendants, and that they had no knowledge or information on that subject at the time of making the conveyance, but were led to suppose and did believe that the amount of their share of the assessments would soon have to be provided for and paid by them to save the property from sale. This land was low and marshy, and at the time of high tide was substantially covered with water. It fronted on the East river, opposite the city of New York, and its advantages for appropriation and use were in its location, and to be made available for useful purposes by dockage and filling up.

The widow of Oliver H. Jones, having the life estate in the property, had made to a representative of the Standard Oil Company, a lease for a term of ten years from May 1, 1876, at a yearly rent equal to the annual taxes and three and a half per cent of all the assessments which should be made upon the premises during the term; and it was further provided by the lease that all docks, piers and filling put on them during that time, should remain without payment, and that the lessor should have the option to take and retain on the land the buildings and other structures put thereon by the lessee, by paying one-half of the value they would have at the end of the term. The defendants Oakley and Rutherford testified that they had no knowledge of the terms of the lease, and had received no information from their brother in that respect at the time they made the sale; and that they were not aware of the advisory provision in their father's will that the property be not sold until his youngest child came of age, which time had not arrived when this sale was made. It appears that the brother was advised of the lease and its provisions, and it may be inferred that he understood something of the purpose for which it was taken, the use which the lessee con-

templated making of the property and the improvements likely to be put upon it for that purpose. It cannot be assumed that the facts before mentioned in respect to the assessments and the time in which they might be paid, the advantageous uses to which the premises may have been applied and the terms of the lease, may not have been worthy of some consideration in the estimation by the defendants of the value of the land, or that their knowledge of them, if they had had such knowledge, would not have furnished to those defendants a controlling reason for not selling their interest in it at the time and for the price for which they did make the conveyance. The relation of confidence, which the jury were permitted to find had continued for years and then existed between the brother and those sisters in respect to business matters, was such as to impose upon him the duty, in his dealing with them, to advise those defendants fully and fairly of all things within his knowledge affecting the value of any property to which such transactions might relate; and as between them no transfer of property founded upon any unfaithful representations or concealments, essentially bearing upon its condition or situation, could lawfully be made available to him to their prejudice. The jury found the land in question to have been worth $75,000. This would give to the interests of those defendants in it, a value of at least $12,000 over the assessments at the time of the sale, which was made for one-sixth of that sum. In that view they may have suffered a loss of $10,000 in making it. It does not appear that the purchase was made for the benefit of the brother or that he personally expected to realize anything from it. But the negotiation for it with his sisters was conducted wholly by him, and the inference was permitted by the evidence that in doing so he acted for his father-in-law, the grantee, although he may not have so appeared at the time to his sisters. And, so treating the transaction, the instrumentalities imputable to the brother in consummating the sale and conveyance may, for the purposes of the remedy and relief, be deemed adopted by the grantee, who would not be permitted

to take the fruits of the dealing free from the infection in the agency by which they through it were produced. (*N. L. Ins. Co.* v. *Minch,* 53 N. Y. 145; *Krumm* v. *Beach,* 96 id. 398; *Mayer* v. *Dean,* 115 id. 556; *Whelan* v. *Whelan,* 3 Cow. 537.) The evidence most favorable to the defendants, tended to prove the facts found by the jury, and was sufficient to support upon the merits, the relief awarded by the judgment. The conclusion was warranted that the sale was produced through the influence of Oliver L. Jones upon the action of his sisters and by reason of their confidence in and reliance upon him, which he knew they entertained in matters relating to their business; that he not only made to them representations misleading to their prejudice in respect to the character and condition of the property, and by failure to give them the information which his confidential relation and his duty to them required him to give, he concealed from his sisters facts essentially bearing upon the value of the premises in fact and to them, and by that means induced them to believe that it was for their interest to make the sale and conveyance, as they did, to Charles H. Jones, and that otherwise it would not have been accomplished. And in view of the fact that the sale was for a grossly inadequate price, those representations and concealments were such as a court of equity may properly characterize as fraudulent for the purposes of rescission of a sale, cancellation of a conveyance and the restoration of property transferred by it. And such is the effect of the relief given by the judgment. (Story's Eq. Jur. § 246; Pomeroy's Eq. Jur. §§ 873, 880, 902; *Schiffer* v. *Dietz,* 83 N. Y. 300.) It follows that there was no error in the denial of the motion made by plaintiff's counsel for the direction of a verdict for the plaintiff as to the defendants, or either of them.

There were exceptions taken by the plaintiff to the reception and exclusion of evidence, and to the refusal of the court to charge the jury as requested. The statute provides for the trial of the issues of fact in actions of this character by jury. (Code, § 1544.) And, therefore, the trial court could not disregard the findings of the jury in determining the action, as may be done

in equity cases where issues are in the discretion of the court sent to the jury for trial. The exceptions taken at the trial in the present case before the jury, are entitled to consideration upon this review. (*Hewlett* v. *Wood*, 62 N. Y. 75.) The court was requested and declined to charge " that if Oliver L. Jones believed, or had reason to believe, that the statements he is alleged to have made were true, the plaintiff must have a verdict," and exception was taken. Without expressing any opinion upon the question which would be presented if the right of the defendants to relief had been dependent solely upon representations made to them by him, it is sufficient that the action and relief were founded somewhat upon his concealment from them of facts, which, as before mentioned, may have been treated as such a breach of duty or abuse of confidence, as to constitute fraud in support of the relief sought and obtained by those defendants, and, therefore, that ruling was not error. There were some other exceptions to refusal of the court to charge as requested, to which our attention has not been specifically called by counsel, and none of which seem to have been well taken. The examination of defendants, Mrs. Oakley and Mrs. Rutherford, embraced inquiry into certain transactions and interviews between them and their brother, extending through the period from the time of their father's death until and following the time of the conveyance in question, and many exceptions were taken to the reception of the evidence given by them; and it is insisted by the plaintiff's counsel that it was not competent to give evidence of the transaction between the brother and those sisters, except so far as related to the fact, time and act of negotiation, sale or conveyance, and such as in some manner related to it. It is quite true that other transactions between those persons were not, nor were the declarations of Oliver L. Jones to those defendants, material or merely as such competent evidence against the grantee or the plaintiff. They were admissible as evidence only as bearing upon the relation of trust and confidence between the brother and sisters, and as tending to prove an abuse of such confidence in inducing them to sell

their property. And it was in that view that the evidence of those transactions foreign to the subject of the sale and convey- ance was received. The fact that he had their confidence, and that they in consequence relied and in some sense were depend- ent upon and subject to his influence in relation to their prop- erty interests, was quite an important element in the cause of the complaint alleged in their answer, and in support of their claim to relief. This they sought to establish by evidence of various interviews and transactions between them, extending through a considerable period of time, characterizing their relation to their brother, and tending in some degree to prove that it was that of confidence and dependence in matters hav- ing relation to the management of their interests in the estate of their father, deceased. And while some of the circum- stances within the evidence had, standing alone, no apparent bearing upon the subject, it cannot well be said that in con- nection with the other facts they necessarily had no relation to it. Some, and perhaps much, of the evidence may have been entitled to but little consideration; but it was for the jury, upon proper instructions of the court, to determine its weight on the question to which it was legitimately directed. For the purpose of ascertaining the relation between those persons, and whether it was that of confidence and trust in the brother, and assumed by him, inquiry into the transactions between them was properly permitted. There seems to have been no other means of presenting the question for the con- sideration of the jury. The evidence to which objections were taken was of this general character, and because some of the transactions between them to which it related may not of themselves have apparently tended to prove such fact, did not necessarily render its reception error. The exceptions on the part of the plaintiff went to the reception of all the evidence of transactions and conversations between the brother and those sisters, not within the negotiation and connected with the act of consummation of the sale in question. And such objections were based upon the doctrine applicable to principal and agent, which excludes from consideration as against the

former, the acts and declarations of the latter when not engaged in the execution of his agency and not relating to the subject of its performance in which he is at the time engaged. While that rule rests upon sound and well-settled principles, it may not be applicable when the question is one of fraud, arising from disability of the agent to deal advantageously and in abuse of his relation of trust and confidence, with a person towards whom he holds such relation. Then the field of inquiry is open to prove the fact upon which such charge is founded. That was the charge made by the defendants in the present case, and to which the evidence was directed. And for that reason its reception was not error. The evidence of Oliver L. Jones was essentially in conflict with that of his sisters. And it was to the effect that he acted upon their suggestion and request and solely for them, in making the sale, and his evidence was a denial that his relation with them was of a confidential character in respect to their business or in that transaction, which they sought by their evidence to give him. If his evidence had been taken by the jury as their guide, the plaintiff would have been entitled to a verdict. The trial court so charged them. It must now be assumed that upon the conflict in the testimony, the jury gave effect to that most favorable to the defendants. There were several exceptions taken to the evidence of that witness on his cross-examination. But in view of that given by him in chief, there was no error in the reception of that to which objections were so taken, for the reasons before given, having relation to the charge of his confidential relation to his sisters; and for the further reason that it was within the discretion of the court to permit the extended cross-examination made as bearing upon the question of his credibility. The plaintiff's counsel offered to prove by Mr. Gardner that he endeavored at some time and when, to sell the interest of his wife in this property, and that he could not get $5,000 for it; and that Miss Lillian L. Jones fixed a price on her share, and that the same witness endeavored to sell it for her at the price so fixed and failed to do so. This evidence was wholly immaterial upon the question

of value of the property and was properly excluded. While evidence of the sale of certain property may be competent on the question of its value, a mere effort or offer to sell or to buy at any particular price, unless made by one who is a party to the litigation on the subject, is not legitimately entitled to any consideration upon the question of value. Mr. Jones having testified that he had no knowledge other than such as he had obtained from inquiries, as to the price at which the improvement certificates could have been purchased, was asked what were the inquiries he made, and what was the information he by that means obtained on that subject. This evidence was excluded and exceptions were taken. The evidence may have been admissible. But there was no evidence tending to prove that he had any knowledge on that subject, or which imputed to him intentional concealment from his sisters of anything in that respect. The evidence so excluded did not tend to controvert any fact proved by other evidence, and was not essentially important for any purpose. It is not only not seen how the plaintiff could have been prejudiced by the exclusion of the evidence, but it is quite evident that its reception could have been of no benefit to her upon the issue tried. The exceptions to which reference has not before been generally or specifically made, have been carefully examined, and we think there was no error in the reception or rejection of evidence to the prejudice of the plaintiff. And the same remark is applicable to other rulings on the trial.

The judgment should be affirmed.

All concur, except Brown, J., not sitting.

Judgment affirmed.